UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

JULIEN GABILLY,                                          **Civil Action No.:**
                                                        **19-CV-11884 (RA)**

                                 Plaintiff,

                                                        **FIRST AMENDED**
                                                        **COMPLAINT**
                 -against-                               *Jury Trial is Demanded*


CITY OF NEW YORK; RAHUL DASS
(in an official and individual capacity);
MARIBEL SARANTE (in an official and
individual capacity); and LATEEF STINSON
(in an official and individual capacity),

                                 Defendants.

----------------------------------------------------------------------X

       PLAINTIFF, JULIEN GABILLY, by and through his attorneys, WEINSTEIN &

WEINSTEIN, LLP, providing upon information and belief the following Complaint and state

and allege as follows:

## **PRELIMINARY STATEMENT**

       1.     This is a civil action seeking monetary relief, declaratory judgment, compensatory

and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights via the

Defendants' use of Excessive Force, and subsequent false statements to support the wrongful use

of excessive force bringing about an abuse of process, brought pursuant to 42 U.S.C. § 1983, the

Fifth and Fourteenth Amendment of the United States Constitution, and the laws of the State of

New York.

       2.     Specifically, Defendants (collectively and individually), negligently, wantonly,

recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of his

Constitutional rights, pursuant to the above-mentioned statutes and causes of action by committing acts under color of law and depriving the Plaintiff of rights secured by the United States Constitution, Federal law and laws of the State of New York.

3.     Defendants (collectively and individually), their agents, employees and servants unlawfully and under color of law, engaged in excessive force causing physical and psychological damage to Plaintiff as well as abused process in an attempt to cover-up the excessive force by claiming Plaintiff had resisted arrest via punching a New York City Police Officer in the chest.

4.      Defendant, the City of New York was negligent in training, hiring, and supervising its Police Officers, employees, representatives, and/or agents.

5.     The City of New York at all relevant times, was deliberately indifferent to the need to train its Officers, oversee them, and properly investigate use of force.

6.     Accordingly, as a direct result of the City of New York's policies and inactions, Plaintiff suffered harm to his liberty and person.

7.     As a result of the Defendants' actions (collectively and individually), Plaintiff suffered a violation of his constitutionally protected rights; and significant and lasting physical and psychological harm.

<u>**JURISDICTION AND VENUE**</u>

8.     This action is being brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

9.     The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

10.    This court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367.

11.     Venue in the Southern District of New York is proper under 28 U.S.C. § 1391, based on the fact that the place where the events and violations herein alleged occurred was in The City of New York, New York County.

12.     Pursuant to New York State Law, a Notice of Claim was submitted within 90 days of the incident on February 27, 2019 and a 50-H hearing was conducted on May 7, 2019. This action was commenced within the required one-year-and-90 days.

## **PARTIES**

13.     Plaintiff, JULIEN GABILLY (hereinafter "PLAINTIFF") is a resident of Queens County, New York.  PLAINTIFF is of French national origin.

14.     Upon information and belief, the defendant CITY OF NEW YORK (hereinafter "NEW YORK CITY" or "DEFENDANT" or "DEFENDANT CITY") is a duly constituted municipal corporation of the State of New York.  Upon information and belief, NEW YORK CITY formed and has direct authority over several different departments including the New York City Police Department.  The aforementioned department and/or employees, agents, or representatives of these departments are directly involved in violations that are at issue in this Complaint.

15.     Upon information and belief, Defendant RAHUL DASS (hereinafter "DAS") as all relevant times was a member of the New York City Police Department (hereinafter "NYPD) and employed by NEW YORK CITY.

16.     Upon information and belief, Defendant MARIBEL SARANTE (hereinafter "SARANTE"), at all relevant times herein was a member of the NYPD and employed by NEW YORK CITY.

17.     Upon information and belief, Defendant LATEEF STINSON (hereinafter "STINSON") at all relevant times herein was a member of the NYPD and employed by NEW YORK CITY.

18.     Defendants DASS, SARANTE, and STINSON are hereinafter collectively referred to as the INDIVIDUAL DEFENDANTS.

19.     The INDIVIDUAL DEFENDANTS and DEFENDANT CITY are hereinafter collectively referred to as the DEFENDANTS.

20.     The INDIVIDUAL DEFENDANTS are being sued in their individual and official capacities.

21.     At all relevant times herein, INDIVIDUAL DEFENDANTS were acting under color of New York State and Federal law while employed by NEW YORK CITY at the NYPD.

## FACTUAL ALLEGATIONS

**Plaintiff Stops His SUV**

22.     On January 1, 2019, PLAINTIFF stopped his vehicle, a keyless start/stop SUV, in the vicinity of Grand Street and Clinton Street within New York County.

23.     Plaintiff admits that he was drinking and driving and plead guilty as a result to an unclassified misdemeanor in New York County Criminal Court.

24.     PLAINTIFF was not pulled over, but voluntarily stopped his vehicle, facing the wrong way on a one-way street.

25.     PLAINTIFF then shut the vehicle off and exited the vehicle.

26.     At the time PLAINTIFF stopped, shut off, and exited the vehicle, there were no members of the NYPD present.

**Defendants Arrive**

27.     Moments later, Defendants DASS and SARANTE driving a marked NYPD vehicle, and in uniform approached PLAINTIFF.[1]

28.     After approaching PLAINTIFF, DASS and SARANTE proceeded to order PLAINTIFF to stand against the side of his vehicle, in the cold rain.

29.     PLAINTIFF was entirely complaint and upon request, handed over his DASS and SARANTE even handed PLAINTIFF's his car keys back.

30.     After approximately 15-20 minutes of making PLAINTIFF wait against his vehicle in the cold and rain, PLAINTIFF repeatedly asked DASS and SARANTE if he may leave, thinking he would be permitted to do so being that his keys were handed back to him, to which they continued to give non-committal answers.

31.     After approximately 15 minutes, PLAINTIFF then straightened up, as oppose to against his vehicle, he was then told to get back against his car.  PLAINTIFF was entirely compliant and not combative.

**Excessive Force Against Plaintiff**

32.     PLAINTIFF's wrist was then grabbed by SARANTE and PLAINTIFF was thrown to the concrete ground by DASS and SARANTE acting together.

33.     When thrown to the grown, PLAINTIFF's head hit the pavement.

---

[1]     *See* Exhibit A.  The entirety the facts contained within paragraphs 24-27 are on video.  Said video was relied on heavily in drafting this Amended Complaint and is to be incorporated as part-and-parcel with the Complaint.  A copy has been inserted here as a hyperlink and will be sent to the Court.

34.     DASS and SARANTE proceeded to pummel PLAINTIFF, using their fists, elbows, knees, and bodies to cause significant harm to PLAINTIFF's body.[2]

35.     This excessive force resulted in significant bodily bruising over PLAINTIFF's arms, head, hands, torso, and legs.

**Plaintiff's Physical Injury**

36.     The following are photos of physical injuries Plaintiff suffered as a result of the excessive force used against him:



---

[2]     *See* Exhibit B-1 / B-2 (Body Camera Footage of Defendants DASS and SARANTE respectively). The entirety of paragraphs 28-33 is on video / body camera footage.  Said Videos were relied on heavily when drafting this Amended Complaint and is to be incorporated as part-and-parcel with the Complaint. The body camera footage from DASS is hyperlinked here and for SARANTE is hyperlinked here. will be sent to the Court.













37.     PLAINTIFF was then placed inside a NYPD vehicle and taken to a precinct.

38.     Approximately two hours later, while still bleeding, dazed from the beating and in pain, PLAINTIFF was taken to Bellevue Hospital for treatment of his injuries.[3]

**The Cover-Up**

39.     Upon information and belief DASS and SARANTE knew that they had engaged in excessive and unnecessary force in that as they pummeled PLAINTIFF they removed and covered-up their body-cameras, preventing their continued visual recording.

40.     Subsequently, in further attempt to cover-up and justify the excessive and unnecessary force, Defendant STINSON falsely accused PLAINTIFF, via sworn-to New York City Criminal Court Complaint of punching at DASS.[4]

41.     DASS later signed a supporting affidavit to the Complaint signed under penalty of perjury. Thus, DASS swore to the false statements made in the Criminal Complaint, such as observing PLAINTIFF drive, observing the keys in the ignition (though PLAINTIFF's vehicle is keyless), and observing PLAINTIFF behind the wheel of the vehicle, though DASS only was on scene after PLAINTIFF had exited the vehicle, as observed in Exhibit A.

42.     STINSON falsely claimed to have observed said punch at DASS via DASS's body-camera.  However, said punch does not appear on said body-camera, or anywhere else, at all.

43.     As readily evinced on the ample audio/video footage of the event, PLAINTIFF was compliant, non-aggressive, and at no point engaged in any violent behavior towards DASS or SARANTE.

44.     DEFENDANTS conduct was not justified and was entirely unnecessary as PLAINTIFF was complaint and not a threat.

---

[3]     *See* Exhibit C.  Body camera footage from Defendant STINSON of PLAINTIFF being taken to the hospital.  A Copy of Exhibit C is hyperlinked here.
[4]     *See* Exhibit D, Copy of Criminal Complaint.

45.     Defendants DASS and SARANTE lied and falsified information to justify their actions.

46.     In the "Threat, Resistance or Injury (T.R.I.) Incident Worksheet"[5] DASS claimed that Plaintiff used a "Hand Strike"; was "Wrestling/Grappling"; and was "Pushing/Shoving". Moreover, DASS claims that force was necessary for the "Defense of Self"; "Defense of Other MOS"; and to "Overcome Resistance or Aggression"

47.     In furtherance of the cover-up, DASS and SARANTE completed a "Line of Duty Injury Report"[6].  Therein, DASS and SARANTE state that DASS was "ATTEMPTING TO PLACE A VIOLENT PERPETRATOR UNDER ARREST" and "WAS TRYING TO SUBDUE A VIOLENT SUSPECT".

48.     In additional furtherance of the cover-up, SARANTE, further describes Plaintiff as a "Violent perpetrator".[7]

49.     The INDIVIDUAL DEFENDANTS furthered their cover-up by falsely claiming they observed PLAINTIFF "operating vehicle" with "keys in the ignition" "engine running".  As Exhibit A clearly shows, no such occurrence was viewed by DASS and is a blatant lie.[8]

50.     In the arrest report, further falsehoods are made that DASS observed Plaintiff "exit his vehicle and begin to stumble and lose balance". As Exhibit A clearly shows, no such occurrence was viewed by the INDIVIDUAL DEFENDANTS.

---

[5]     Attached hereto as Exhibit E.
[6]     Attached hereto as Exhibit F.
[7]     *See* Exhibit G, "WITNESS STATEMENT – INJURY TO MEMBER OF DEPARTMENT".
[8]     *See* Exhibit H, "ARRESTING OFFICER'S REPORT – INTOXICATED DRIVERS ARREST".

51.     The INDIVIDUAL DEFENDANTS filed multiple reports in an attempt to cover-up their unnecessary excessive force against Plaintiff. But for the video and body camera footage, the INDIVIDUAL DEFENDANTS would have been able to get away with this cover-up.

52.     The City of New York allowed and encourage such false reporting to justify excessive force used against individuals such as PLAINTIFF.

53.     As a direct result, PLAINTIFF suffered significant physical injury and phycological injury, which necessitated multiple mental health visits and treatment.

54.     As a direct and proximate cause of DEFENDANTS' conduct, PLAINTIFF suffers from anxiety, stress, sleeplessness, and panic attacks.

## AS AND FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
(Excessive Force)

55.     PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 53 of this Complaint with the same force and effect as if fully set forth herein.

56.     DEFENDANTS, acting under color of law and while engaging in their official duties as Police Officers, did engage in excessive and unnecessary force by pummeling PLAINTIFF with their fists, knees, elbows, and bodies.

57.     PLAINTIFF was compliant, non-aggressive, and at no point engaged in any violent behavior towards DASS or SARANTE.

58.     PLAINTIFF's conduct does not justify the excessive and unnecessary force used against him by DEFENDANTS.

59.     Moreover, PLAINTIFF suffered significant physical pain, including a loss of sensitivity to PLAINTIFF's hand, as well as psychological injury.

60.    As a direct and proximate cause of DEFENDANTS' conduct, PLAINTIFF has lost earnings, suffers from anxiety, stress, sleeplessness, and panic attacks.

61.    The by reason of the foregoing, PLAINTIFF has been damaged.

## AS AND FOR A SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983
(Failure to Intervene)

62.    PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

63.    As the videos clearly evince, multiple officers, aside from DASS and SARANTE were on-hand at the time prior to the excessive force used against PLAINTIFF.

64.    Police officers have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.

65.    DEFENDANTS utterly failed in this duty by allowing the unwarranted assault on PLAINTIFF to occur.  Moreover, they allowing the excessive force to continue when each one, and other officers were able to step-in and stop it.

## AS AND FOR A THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983
(Conspiracy)

66.    PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 64 of this Complaint with the same force and effect as if fully set forth herein.

67.    As detailed above the INDIVIDUAL DEFENDANTS engaged in a scheme, each supporting the others claim and false story, for the purpose of covering up the excessive force used against PLAINTIFF and to punish plaintiff further by alleging that PLAINTIFF resisted arrest.

68.    The INDIVIDUAL DEFENDANTS effected this scheme and conspiracy by the overt act of submitting false sworn statements to the New York County Criminal Court via a Criminal Complaint that falsely claimed PLAINTIFF did punch at DASS to support a claim of resisting arrest; as well as false statements regarding DASS's alleged observation of PLAINTIFF operating his vehicle and the keys in the vehicle, even though it is a keyless vehicle.

69.    Moreover, the INDIVIDUAL DEFENDANTS submitted false statement within the NYPD itself in the form of a falsified use of force document and line of duty injury document, as detailed above.

70.    Upon information and belief the purpose of the INDIVIDUAL DEFENDANTS action was to ensure PLAINTIFF would be prosecuted and charged with resisting arrest and an attempt to justify the unlawful and excessive use of force against PLAINTIFF.

### AS AND FOR A FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983
(Municipal Liability)

71.    PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 70 of this Complaint with the same force and effect as if fully set forth herein.

72.    In actively inflicting and failing to prevent the above stated abuses incurred upon PLAINTIFF of Excessive Force and resulting cover-up that comes from a disregard to proper training of police officers; the DEFENDANTS acted unreasonably, recklessly, and negligently in failing to exercise the slightest amount of due care to secure and protect the civil and constitutional rights of PLAINTIFF.

73.    Said civil and constitutional rights are guaranteed to PLAINTIFF by 42 U.S.C. §§ 1983, Fourth, and Fourteenth Amendment of the United States Constitution.

74.     According to ProPublica, there are at least 4,000 active duty NYPD Officers who have had at least one allegation substantiated against them by the CCRB.[9]

75.     Moreover, "testilying", the falsifying of reports by police officers, is a persistent problem within the NYPD that has effectively been ignored by NEW YORK CITY.  The New York Times conducted an in-depth report in 2018, finding that officers made false statement in official reports and under oath to cover-up illegal and unconstitutional activity.[10]

76.     In an article published by the Gothamist, it was found that "data shows that the NYPD rarely moves forward with dishonesty findings they receive from the city's civilian oversight board."[11]

77.     On the subject of "testilying", retired Judge Shira Scheindlin stated:

> As the finder of fact of fact in this request for provisional equitable relief, I decline to fully credit defendants' hearsay affidavit asserting that the NYPD vigorously investigates each and every allegation of false testimony or perjury. Such a claim is simply not credible to a judge with close to twenty years of experience. My experience and that of my colleagues have been discussed in the media. *See, e.g.,* Benjamin Weiser, *Police in Gun Searches Face Disbelief in Court,* N.Y. Times, May 12, 2008 (describing the pervasive problem of "testilying" and the lack of NYPD monitoring or investigations); Anemona Hartocollis, *Officer Is Cleared in Mass Arrests at 2004 G.O.P. Convention,* N.Y. Times, Mar. 1, 2007 (describing an NYPD decision not to prosecute an inspector despite plain contradictions between sworn statements and deposition testimony)."  *Mullins v. City of New York*, 634 F. Supp. 2d 373, n.114 (S.D.N.Y. 2009).

---

[9]      *See*  https://www.propublica.org/article/nypd-civilian-complaint-review-board-editors-note (last visited August 19, 2020).

[10]     *See* https://www.nytimes.com/2018/03/18/nyregion/testilying-police-perjury-new-york.html?emc=edit_ta_20180318&nl=top-stories&nlid=60855337&ref=cta (last visited August 19, 2020).

[11]     *See* https://gothamist.com/news/ccrb-tells-nypd-which-cops-have-lied-usually-nothing-happens (last visited August 19, 2020).

78.    In the instant matter, the INDIVIDUAL DEFENDANTS engaged testilying  in the falsifying of records that were both submitted internally and before a Court to cover-up their wrongdoing.

79.    NEW YORK CITY exhibited gross negligence and deliberate indifference to PLAINTIFF by allowing the INDIVIDUAL DEFENDANTS to patrol the streets without proper training or discipline.

80.    NEW YORK CITY was more concerned about the result then the process itself, causing many individuals to be improperly stopped, seized and maliciously prosecuted without probable cause all because of the color of their skin and the areas in which they live.

81.    Such policies of NEW YORK CITY directly and actually caused the harm to PLAINTIFF via encouraging and supporting Excessive Force by the NYPD and by the INDIVIDUAL DEFENDANTS.

82.    NEW YORK CITY has permitted, tolerated, and effectively encouraged a pattern and practice of unjustified, unreasonable, and illegal abuses of persons by police officers of NEW YORK CITY.

83.    Although such police conduct was improper, said incidents were covered up and NEW YORK CITY, its agents, employees and servants by official claims that's the officers' gross negligence, excessive force and abuse of process were justified and proper, or by leveling false charges against the persons who were victims of said gross negligence, illegal searches and seizures and abuse of process, so as to insulate the offending police officers and other officials from prosecution and liability.

84.    Said actions and claims have been fully backed by NEW YORK CITY, which has repeatedly and unreasonably sided with the abuse of persons so affected in far too many cases,

despite vast evidence of wrongdoing by its police officers against individuals, including PLAINTIFF herein.

85.    Additionally, NEW YORK CITY has systematically failed to properly train or identify the improper abuse, misuse, violative acts by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision or restraint.

86.    Unjustified use of force and excessive force have been a known and regular issue within the NYPD for NEW YORK CITY, with the death of Eric Garner reaching national attention.

87.    According to NEW YORK CITY's own data, for 2018, there were 6,467 incidents where a Use of Force Report was generated, yet it is shocking claimed that only 15 of those incidents violated the NYPD Use of Force policy.  This is simply incredulous.

88.    SARANTE has a prior instance where it was alleged SARANTE fabricated information to justify unlawful actions.  *See Warren, et. al. v. The City of New York, et. al.*, 08-cv-3815 (ARR) (RER) (E.D.N.Y.) Doc. No. 27, paragraphs 64 – 74. The matter settled.  However, upon information and belief, SARANTE was never disciplined for that matter.

89.    As of 2009, SARANTE had at least eight (8) CCRB complaints, two (2) of which were for force, and seventeen (17) open Internal Affairs Bureau allegations.

90.    Upon information and belief, specific systemic flaws in the NEW YORK CITY and its police department's policy provide for the unquestioning acceptance of the police officers' reports as provided regarding abuses and civil rights infringements, despite evidence to suggest that the police reports are inaccurate, untruthful and meant to conceal blatant police misconduct.

91.     Said cover-up by the NEW YORK CITY, was executed in this case where NEW YORK CITY, its agents, employees and servants failed to properly act in a reasonable and lawful manner resulting in the excessive force of PLAINTIFF.

92.     By permitting and assisting such a pattern of police misconduct, NEW YORK CITY, acted under color of custom and policy to condone, encourage and promote the deprivation of PLAINTIFF's Fourth and Fourteenth Amendment rights.

93.     The actions, of the INDIVIDUAL DEFENDANTS in supporting and causing excessive force and other such wrongs against PLAINTIFF was a direct result of NEW YORK CITY'S failure to train and supervise the INDIVIDUAL DEFENDANTS, who were each acting under color of law and pursuant to the objectives of NEW YORK CITY.

94.     NEW YORK CITY should have known that such failures and gross negligence would cause the precise economic, emotional, physical and civil rights injuries suffered herein in by PLAINTIFF.

95.     As a direct consequence of the NEW YORK CITY'S systemic practice, pattern, and custom of intentionally or recklessly promoting and supporting it's officers and officials violations of 42 U.S.C. § 1983, PLAINTIFF was deprived of right to be free of excessive force under the Fourth Amendment and subject to extensive harm.

96.     As a proximate cause of NEW YORK CITY, its agents and employees, supporting and effectively promoting the very same police abuses which occurred against PLAINTIFF, PLAINTIFF was subjected to great fear, personal humiliation and degradation,

97.     DEFENDANTS exhibited a wanton disregard for the harm and damage done to the economic and emotional wellbeing of PLAINTIFF.

98.     As a direct and proximate cause of DEFENDANTS' conduct, PLAINTIFF has lost earnings, suffers from anxiety, stress, sleeplessness, and panic attacks.

99.     That by reason of the foregoing, PLAINTIFF has been damaged.

### AS AND FOR THE FIFTH CAUSE OF ACTION:
### COMMON LAW ABUSE OF PROCESS
(Against the Individual Defendants)

100.     PLAINTIFF repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 99 of this Complaint with the same force and effect as if fully set forth herein.

101.     The INDIVIDUAL DEFENDANTS during the regularly issued criminal process, signed or caused to be signed a false statement, including but not limited that PLAINTIFF struck at DASS, with an intent to do harm to PLAINTIFF without excuse or justification, *i.e.*, the cover-up of the excessive and unjustified force against PLAINTIFF.

102.     That the INDIVIDUAL DEFENDANTS did use the criminal process via the accusation of resisting arrest by punching an officer in a perverted manner to obtain a collateral objective, *i.e.* the cover-up of the excessive unjustified force against PLAINTIFF.

103.     Said conduct directly resulted in a false and malicious process and charge to be levied against PLAINTIFF, causing about injury to PLAINTIFF.

### AS AND FOR THE SIXTH CAUSE OF ACTION:
### COMMON LAW VICARIOUS LIABILITY
(Against the CITY OF NEW YORK)

104.     PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 103 of this Complaint with the same force and effect as though fully set forth herein.

105.    All of the above-mentioned improper actions taken by the INDIVIDUAL DEFENDANTS were committed while they were acting in furtherance of NEW YORK CITY official business.

106.    All of the above-mentioned improper actions taken by the INDIVIDUAL DEFENDANTS were committed while acting within the scope of their authority and assigned duties as employees, agent, and officer for NEW YORK CITY.

107.    NEW YORK CITY knew and/or should have known that said improper activity and blatant violations of PLAINTIFF'S constitutionally secured rights were taking place by its employees while acting within the scope of their assigned duties.

108.    The INDIVIDUAL DEFENDANTS engaged in excessive force against PLAINTIFF with no cause.

109.    The INDIVIDUAL DEFENDANTS filed and/or caused to be filed, false/perjured statements pertaining to the arrest of PLAINTIFF.

110.    The above stated willful, reckless, negligent action taken by the INDIVIDUAL DEFENDANTS against PLAINTIFF, while acting within the scope of their authority was foreseeable and/or should have been reasonably anticipated by NEW YORK CITY.

111.    NEW YORK CITY is responsible and/or liable to PLAINTIFF for each and every above-described act committed by the INDIVIDUAL DEFENDANTS while acting within the scope of their authority as employees, agents, and law enforcement officers for THE CITY OF NEW YORK.

112.    As a direct result of DEFENDANTS grossly negligent acts, PLAINTIFF suffered and is entitled to damage sustained to date.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Assault)

113.    PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 112 of this Complaint with the same force and effect as though fully set forth herein.

114.    DASS and SARANTE, acting under color of law and while engaging in their official duties as police officers, did engage in excessive and unnecessary force by pummeling PLAINTIFF with their fists, knees, elbows, and bodies.

115.    PLAINTIFF was compliant, non-aggressive, and at no point engaged in any violent behavior towards DASS or SARANTE.

116.    PLAINTIFF's conduct did not justify the excessive and unnecessary force used against him by DASS and SARANTE.

117.    Moreover, PLAINTIFF suffered significant physical pain, including a loss of sensitivity to PLAINTIFF's hand, as well as psychological injury.

118.    As a direct and proximate cause of DEFENDANTS' conduct, PLAINTIFF has lost earnings, suffers from anxiety, stress, sleeplessness, and panic attacks.

119.    The by reason of the foregoing, PLAINTIFF has been damaged.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
### (Battery)

120.    PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 119 of this Complaint with the same force and effect as though fully set forth herein.

121.    DASS or SARANTE, acting under color of law and while engaging in their official duties as police officers, did engage in excessive and unnecessary force by pummeling PLAINTIFF with their fists, knees, elbows, and bodies.

122.    PLAINTIFF was compliant, non-aggressive, and at no point engaged in any violent behavior towards DASS or SARANTE.

123.    PLAINTIFF's conduct does not justify the excessive and unnecessary force used against him by DASS or SARANTE.

124.    Moreover, PLAINTIFF suffered significant physical pain, including a loss of sensitivity to PLAINTIFF's hand, as well as psychological injury.

125.    As a direct and proximate cause of DEFENDANTS' conduct, PLAINTIFF has lost earnings, suffers from anxiety, stress, sleeplessness, and panic attacks.

126.    The by reason of the foregoing, PLAINTIFF has been damaged.

## AS AND FOR THE NINTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

127.    PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 126 of this Complaint with the same force and effect as though fully set forth herein.

128.    DEFENDANTS' conduct has harmed Plaintiff emotionally.

129.    DEFENDANTS have recklessly and wantonly engaged in excessive force that, foreseeably would result in emotional damages upon any person subjected to a brutal beating.

130.    DEFENDANTS' conduct is a direct and proximate cause of PLAINTIFF's emotional distress.

131.    DEFENDANTS' have negligently engaged in this conduct causing PLAINTIFF's emotional distress, as DEFENDANTS knew, or should have known, that acting in excessive force would result in PLAINTIFF's emotional distress.

132.    Because of DEFENDANTS' conduct, PLAINTIF has been damaged.

## PUNITIVE DAMAGES

133.    The PLAINTIFF repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 132 of this Complaint with the same force and effect as though fully set forth herein.

134.    The acts of the DEFENDANTS were willful, wanton, malicious and oppressive and were motivated by a desire to harm DEFENDANT, without regard for PLAINTIFF's wellbeing or civil rights, and were based on a lack of concern and ill-will towards PLAINTIFF.

135.    DEFENDANTS caused and allowed multiple false reports and cover-ups to ensue in an attempt justify their wrongful use of excessive force upon PLAINTIFF.

136.    Such acts therefore deserve an award of punitive damages in order to ensure that no such wanton violation of Civil Rights occurs to any others.

**WHEREFORE**, PLAINTIFF demands judgment against DEFENDANTS:

a.      Special and Compensatory Damages;

b.      Punitive Damages;

c.      Award costs of this action including attorney's fees to the PLAINTIFF; and

d.      An order granting such other legal and equitable relief as the court deems just and proper,

**<u>A JURY TRIAL IS HEREBY DEMANDED</u>.**

Pursuant to Fed. R. Civ. P. 38, PLAINTIFF hereby requests a trial by jury for all issues so triable.

Dated:      August 19, 2020
           Flushing, New York

                       Respectfully Submitted,

                       **WEINSTEIN & WEINSTEIN, LLP**
                       *Attorneys for Plaintiff*

          By:     _____/s_____
                    JACOB Z. WEINSTEIN, ESQ. (JW6133)
                    ISRAEL D. WEINSTEIN, ESQ. (IW6133)
                    68-15 Main St, 2nd Floor
                    Flushing, New York
                    Telephone: (646) 450-3484
                    E-Mail: Jacob@WeinsteinLLP.com
                           Israel@WeinsteinLLP.com